IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RELIANCE STEEL & ALUMINUM,<br><br>                Plaintiff,<br><br>vs.<br><br>TELLING INDUSTRIES, LLC,<br><br>                Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:11CV369DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Telling Industries, LLC's ("Telling") Motion for Summary Judgment. On February 8, 2013, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Lester A. Perry and Defendant was represented by Robert F. Babcock and Jeffrey R. Handy. The court took the motion under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order.

BACKGROUND

Telling manufactures and distributes galvanized metal framing components, specializing in manufacturing galvanized steel studs. In approximately 2009, Telling began a "Program" of buying excess steel from its steel suppliers, which Telling would then turn around and sell for a

profit. To implement the Program, Telling engaged the services of an independent steel sales broker, Mr. Dague. Dague was independent and paid on commission. Dague was told that his point person at Telling would be its Manager of Inventory and Material, Greg Yashnyk. Yashnyk's direct supervisor was Stephen Linch, Vice President of Manufacturing and Operations, and his supervisor was Edward Slish, President of Telling.

Dague set up several sales. However, there were problems with Yashnyk's ability to make sure the orders were correctly and timely filled. Dague testified that he tried tell Slish about the problems but never got a response. Nonetheless, Telling claims that it was aware of Yashnyk's problems and due to the problems, it decided to terminate the Program in April 2010. Despite its position that the Program was discontinued, sales continued under the Program until December 2010.

Sometime before the Program was allegedly discontinued, Dague approached Yashnyk about buying and reselling hot rolled steel. Although Telling did not buy or sell hot rolled steel, its main supplier of galvanized steel was also a large supplier of hot rolled steel. Dague explained that Telling could get better prices from the supplier for its galvanized steel if it became a preferred buyer and, with the preferred price, Telling could make a profit on the resell of hot rolled steel. Yashnyk told Dague that he would have to check with Slish. Yashnyk did not check with Slish, but he told Dague that Slish said no.

A few months later, Dague approached Yashnyk again about reselling hot rolled steel. Yashnyk again told Dague that he would check with Slish and did not do it. However, this time, Yashnyk told Dague that Slish approved of reselling hot rolled steel.

Dague set up a sale for hot rolled steel with Reliance Steel & Aluminum ("Reliance").

Reliance had used Dague as its broker for several years.  Dague's contact at Reliance was Jenny Woolson, Reliance's Purchasing Manager.  The two had worked together for many years.  Woolson knew that Dague owned his own independent company and that Dague was acting as a broker to strike a deal between Reliance and Telling.

After Dague reported Reliance's interest to Yashnyk, Yashnyk contacted Telling's main supplier regarding the lead times and prices of hot rolled steel.  He conveyed that information to Dague, and Dague gave the information to Woolson.  Woolson then gave Dague a first purchase order for hot rolled steel, which Dague forwarded to Yashnyk.

Yashnyk never forwarded the order to its supplier and never told anyone else at Telling about the order.  Although he did not act on the order, Yashnyk proceeded to lie to Dague and Woolson about the status of the order.  For example, he stated the order had been placed and accepted by the supplier.  He also told them the steel was shipping on certain railcars.  As Yashnyk delayed in placing the order, the price of hot rolled steel skyrocketed and made it impossible for Telling to make a profit on the deal.

Although Woolson had not received the first order of steel, she placed another order.  After Reliance placed the second order and had trouble finding the railcars Yashnyk indicated for the first order, Yashnyk admitted to ague that he had not placed the first order.  Dague relayed this information to Woolson and assured her that Telling was a reputable business and the situation would be corrected.   Woolson asked for more documentation as to the status of the orders going forward.

Woolson continued to place three more orders that Telling never filled.  Yashnyk claims that he was so busy with galvanized steel orders that he continually put Reliance's hot rolled steel

orders on the back burner. Instead of admitting the delays, however, Yashnyk would lie to Dague and Woolson about the status of the orders. He even used his supplier's letterhead to make it appear that he had placed the orders and was receiving status updates.

After a couple of months, Dague contacted the accounting department at Telling about his commissions on the orders. The accounting department had no knowledge of the orders. The accounting department contacted Yashnyk's supervisor about Dague's call. Yashnyk eventually admitted to everything and Telling terminated his employment. Upon learning of the unfilled orders, Slish approached Dague and offered him $30,000 to rectify the situation.

## DISCUSSION

Telling moves for summary judgment, arguing that Reliance has no breach of contract claim against it because Yashnyk had no authority to enter into contracts to buy and/or sell hot rolled steel to Reliance. Reliance, however, argues that Telling is liable for breach of contract because Dague had actual and apparent authority and Yashnyk had apparent authority.

In an agency relationship, an agent "cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988). Absent actual or apparent authority in an authorized agent, a principal may not be bound to a contract entered into by an unauthorized agent unless the principal later adopts and ratifies the contract. *Moses v. Archie McFarland & Sons*, 230 P.2d 571, 573 (Utah 1951).

Telling contends that Dague was not its agent. Even assuming for purposes of the motion that he was, Telling argues that Dague did not have actual or apparent authority to enter into contracts in which Telling would supply hot rolled. Telling also claims that Yashnyk did not

have apparent authority to enter into contracts under which Telling would supply hot rolled steel.

### A. Actual Authority of Dague

Actual authority exists in two forms: actual express authority and actual implied authority. *Zions*, 762 P.2d at 1094. Actual implied authority is "authority based upon the premise that whenever the performance of certain business is confided to an agent, such authority carries with it by implication authority to do collateral acts which are the natural and ordinary incidents of the main act or business authorized." *Id.* As such, an agent has implied authority to perform those acts "which are incidental to, or necessary, usual, and proper to accomplish or perform, the main authority expressly delegated." This authority may be implied from the "words and conduct of parties and the facts and circumstances attending the transaction in question." Id. at 1095. The analysis focuses on the acts of the principal from the agent's perspective.

To determine Dague's actual authority, the court must look at Dague's reasonable perception of his authority based on Telling's acts. Reliance asserts that Slish told Dague he could "start" by selling galvanized steel. Telling disputes that Dague was told he would "start" with galvanized steel. Nonetheless, both parties agree that Dague was told his point of contact was Yashnyk. When Dague attempted to contact Slish several times, even about problems with Yashnyk, Slish never responded. Furthermore, Telling contends that it terminated the Program, but nobody at Telling ever conveyed that information to Dague. Dague continued to sell galvanized steel through the end of 2010, making more than 150 orders and selling more than $4 million of galvanized steel.

When Dague asked Yashnyk if he could sell hot rolled steel, Yashnyk told him he had

received approval from Slish to do so. Reliance contends that Dague received authority to make the orders from the person designated by Slish to be his contact. Based on this authority, Dague solicited a customer for the hot rolled steel Yashnyk had the ability to buy. Yashnyk accepted all five orders Dague set up for Reliance, Yashnyk and Dague spent several months structuring the sales, and Yashnyk gave Dague all the information he needed to complete the sales.

Dague also knew that Telling had a financial interest in the Reliance orders. If the orders had been timely placed with the supplier mill, Telling would have made a profit on the orders. The orders of hot rolled steel would also have increased Telling's orders from the mill and allowed Telling to receive better per unit pricing from the mill for all its steel.

Telling, however, argues that Dague had no actual authority to broker the deal. Dague has a long history of working as an independent broker in the steel industry. Dague brought parties together but never entered into the contracts or took possession of the steel. Dague recognized that he did not have authority to enter into contracts for the parties he worked to bring together. Dague knew he did not have authority to accept purchase orders on behalf of Telling–he could only present orders for consideration. Dague knew he had to bring quotes to Yashnyk as his point person.

Telling disputes that Yashnyk gave Dague the actual authority to sell hot rolled steel because Yashnyk did not have authority to give authority. Yashnyk told Dague he would have to check with Slish and then lied about doing so. When Yashnyk lied that he had obtained approval to sell hot rolled steel, Yashnyk did not give authority to Dague to accept orders for hot rolled steel on behalf of Telling. He still had to bring the orders to Yashnyk.

The court agrees that Dague did not have authority to accept orders for Telling. The

undisputed facts demonstrate that he presented all orders to Yashnyk for acceptance. However, Telling appears to also argue that Dague had no authority to bring together parties with respect to hot rolled steel because Dague's reliance on Yashnyk's assertion that Slish had given him authority to sell hot rolled steel was unreasonable. Telling argues that based on Dague's misgivings about Yashnyk as a result of Yashnyk's problems with galvanized steel orders, Dague's reliance on Yashnyk's statements was unreasonable. Telling, however, gave Dague no other choice. When he tried to contact Slish, he received no response. Therefore, the reasonableness of Dague's reliance on Yashnyk's statement is clearly a disputed issue of fact that cannot be determined on the evidence before the court as a matter of law.

**B. Apparent Authority of Dague and Yashnyk**

Even in the absence of actual authority, a principal may nonetheless be held liable to a third party under the doctrine of apparent authority. *Luddington v. Bodenvest Ltd.*, 855 P.2d 204, 208 (Utah 1993). Apparent authority is premised on conduct by the principal that causes a third person to reasonably believe that the "principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* at 209. The key in determining whether an agent has apparent authority is ascertaining whether the principal, not the agent, has caused a third party to reasonably believe that the agent has apparent authority. *Zions*, 762 P.2d at 1095. The shorthand test for apparent authority is whether Telling did something to support Woolson's reasonable belief that Dague and Yashnyk had the authority to sell hot rolled steel.

Reliance asserts that by refusing to respond to any communications from Dague after the Program began, Slish obviously turned the program over to Yashnyk. Even when Dague wanted to talk about problems with Yashnyk, Slish did not respond. In addition, Reliance claims to have

ended the Program, yet it did not tell its hired sales broker. Reliance argues that innocent third-party customers were hurt by Telling's decisions to turn over the Program to Yashnyk, its failure to communicate with Dague regarding its termination of the Program, and its failure to oversee Yashnyk's actions. Even if Telling was also an innocent victim of Yashnyk's lies, Reliance points out that "[w]hen one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Campbell v. Gowans*, 100 P. at 401.

Telling, however, argues that it did nothing to give Dague or Yashnyk apparent authority to sell or accept orders for hot rolled steel and Woolson's reliance on Dague and Yashnyk's actions was unreasonable. Telling cannot escape the fact that it made Yashnyk its point person for its sales program. It also has not attempted to dispute that Dague's attempted contact with others at the company were ignored. As stated above, there are clear factual issues in dispute as to whether Dague reasonably relied on Yashnyk's assertions that Slish approved the sale of hot rolled steel. Dague was given Yashnyk as his point person. Despite Dague's misgivings about Yashnyk, when Dague tried to contact someone else at Telling, he received no response. Dague also understood the possible financial benefit to Telling if it became a preferred buyer from its main supplier. Whether it was reasonable for Dague to rely on Yashnyk's statement cannot be decided as a matter of law. Therefore, the court cannot determine as a matter of law whether Dague had apparent authority to sell hot rolled steel for Telling.

In addition, whether Woolson's reliance on Yashnyk's acceptance of the orders was reasonable cannot be decided as a matter of law. The court cannot rule as a matter of law that she was unreasonable in not contacting Telling's president prior to placing an order to ascertain

Yashnyk's authority. Yashnyk had a management position indicative of his ability to place and fulfill orders for Telling. Moreover, Woolson had successfully worked with Dague for several years and Dague indicated that Yashnyk was the point person for Telling's sales program. The court agrees with Reliance that it would stifle business if every sales agent's authority had to be questioned in every instance.

The court also cannot rule as a matter of law that Woolson was unreasonable in following through with the first two orders and placing the additional orders. The court notes that the orders were made in fairly rapid succession. The facts demonstrate that Woolson had some reason to suspect unusual conduct when she learned that the first order had not been placed even though Yashnyk had been supplying information on the order, such as railcar numbers. However, Dague assured her that it was a clerical mistake and that Telling would rectify the problem. In addition to her trust in Dague, she requested additional documentation on the orders' status at this time. When she asked for additional documentation going forward, Yashnyk provided it. Yashnyk provided status reports on the supplier's letterhead. Whether Woolson reasonably relied on Yashnyk's fake status reports is a question of fact. There are facts weighing in each party's favor and the court cannot weigh evidence on summary judgment. Moreover, there is some information that the court does not have before it. For example, given the price changes in steel, Woolson may have been unreasonable to expect Telling to be able to fulfill the orders, but it is unclear whether she would have had information as to Telling's preferred price from its supplier. The court concludes that it cannot rule as a matter of law that Dague lacked apparent authority to sell hot rolled steel for Telling and that Yashnyk lacked apparent authority to accept orders for hot rolled steel for Telling. Accordingly, Telling's motion for summary

judgment is denied.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is DENIED. Within ten days of the date of this Order, the parties shall submit a joint statement to the court indicating when they will be ready to hold the bench trial in this case.

Dated this 15th day of February, 2013.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge